UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELO'S TOWING, INC., | Civil No. 09cv943-L(POR) |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | |
| Defendant. | |

In this insurance breach of contract and bad faith action, Defendant Progressive Casualty Insurance Company ("Progressive") filed a motion for summary judgment. Plaintiff Angelo's Towing, Inc. ("Angelo's") opposed and Progressive replied. Because the court finds that Progressive did not have a duty to defend Angelo's, Progressive's motion is **GRANTED**.

During the relevant time period, Angelo's was covered by a commercial auto policy issued by Progressive ("Policy"). During the Policy period, one of Angelo's employees was involved in an altercation when he or his co-worker was attempting to tow a vehicle from a parking lot. Angelo's was named a defendant in a state court action, captioned *Joseph Murphy v. Angelo's Towing, Inc.* (the "Murphy Action"), which alleged assault and battery. Angelo's tendered the defense to Progressive pursuant to the Policy. Progressive agreed to defend subject to a reservation of rights. After the plaintiff in the Murphy action filed an amended complaint, which added a cause of action for negligent use of self defense force, Progressive advised

Angelo's that it would no longer provide a defense under the Policy. After trial in the Murphy Action, a judgment was entered against Angelo's in the amount of $220,251.88 based on a finding of negligent self defense.

Contending that the Murphy Action presented potential for coverage under the Policy, Angelo's filed a complaint in state court against Progressive for breach of contract and breach of the implied covenant of good faith and fair dealing. Progressive removed the action to this court based on diversity jurisdiction and filed a motion for summary judgment.

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment or adjudication of issues is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Progressive argues that it is entitled to summary judgment because it had no duty to defend or indemnify Angelo's under the Policy. To prevail on a claim for breach of duty to defend,

> the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. The duty to defend exists if the insurer becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement.

*Delgado v. Interins. Exch. of Auto. Club of S. Cal.*, 47 Cal.4th 302, 308 (2009) (emphasis in original, internal quotation marks and citations omitted). "On a motion for summary judgment regarding its duty to defend, the insurer must be able to negate any potential coverage as a matter of law." *N. Am. Bldg. Maint., Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 640 (2006). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).

The pertinent facts are undisputed. (*See* Opp'n at 1.) Angelo's was under contract with a

1  Jack-in-the-Box restaurant, located adjacent to and across the alley from Mission Beach Tattoo,
2  to tow non-customer vehicles from the Jack-in-the-Box parking lot.  On several occasions before
3  the incident, Angelo's had towed from the parking lot vehicles belonging to Mission Beach
4  Tattoo customers, which resulted in animosity between Mission Beach Tattoo employees and
5  Angelo's employees.  (*See* Opp'n at 5 and evidence cited therein.)

6  On June 17, 2010, as a vehicle belonging to one of Mission Beach Tattoo customers was
7  being loaded to be towed, several Mission Beach Tattoo employees and customers began
8  verbally harassing Angelo's employees.  A melee ensued and the police were called.  (*See* Opp'n
9  at 5 and evidence cited therein.)  The detective in charge of the investigation made the following
10 report:

> . . . There was a verbal dispute the [*sic*] escalated to a physical confrontation.  The employees of the tattoo shop approached the tow company employees in the east lot of the Jack-In-The-Box which is at least 100' from the tattoo shop indicating primary aggression on their part.  At least one of the tattoo shop employees was armed with a bat which appears to have been used as a weapon in the Incident.  Ultimately one of the tattoo shop employees, the listed victim in this case, suffered a broken jaw and concussion and was hospitalized.  After interviewing numerous participants in the case we could not determine who caused the injuries to the victim and we could not establish that it was not a mutual combat. . . .

16 (Pl.'s Ex. 1 at H10.)

17 The victim was Joseph Murphy.  On October 11, 2006 Mr. Murphy filed a lawsuit against
18 Angelo's and its employees involved in the incident alleging a single cause of action for assault
19 and battery.  On May 23, 2007 he amended the complaint by adding a claim for negligent use of
20 self defense.  (Def.'s Ex. Y (Angelo's Compl. Ex. 2).)  The amended complaint alleged in
21 pertinent part that "Defendants, and each of them, breached their duty to Plaintiff by using
22 unreasonable force against Plaintiff, including but not limited to, unreasonable force to provide
23 each of the Defendants self-defense from injury and defending others from injury." (*Id*. Ex. 2 at
24 5.)  After the assault and battery claim was voluntarily dismissed and a bench trial was held, the
25 court found that Angelo's employees "negligently exceeded the force reasonably necessary to
26 protect themselves as to Plaintiff JOSEPH MURPHY when one of them kicked him after he had
27 been knocked down and was on the ground." (Def.'s Ex. X.)

28 In pertinent part, the Policy's insuring clause provides for coverage as follows:  "We will

pay damages, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, for which an insured is legally liable because of an accident." (Def.'s Ex. B at 12.) "Accident" is defined in the Policy as "a sudden, unexpected and unintended event . . . that causes bodily injury . . . and arises out of the ownership, maintenance or use of your insured auto." (*Id*. at 10.)

Angelo's argues that the claim that its employees had used excessive force in the exercise of self defense effectively describes an accident under the Policy. (*See* Opp'n at 9, 10.) This argument has been rejected by California Supreme Court in *Delgado v. Interinsurance Exchange*, 47 Cal.4th 302 (2009).

Angelo's suggests that *Delgado* does not apply because it was decided long after Progressive had denied defense and coverage in this case. This is unavailing. In the same insurance duty to defend context, California Supreme Court held that the general rule is "that judicial decisions are to be applied retroactively." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 24 (1995). This is particularly true where, as here, the decision does not announce a new rule of law but clarifies the law as it existed at the relevant time. *Id.* at 25.

In *Delgado* the insured sought accident coverage under a homeowner's insurance policy for having hit and kicked another person in self defense:

> After an assault and battery by the insured, the injured party sued the insured, alleging that the insured had acted under the unreasonable belief of having to defend himself, an act that according to the injured party fell within the policy's coverage of "an accident."

*Delgado*, 47 Cal.4th at 305. The court held that the insurer had no duty to defend, *id*., because the injury-producing event, *i.e.*, the hitting and kicking in self defense, was not an accident, *id*. at 311-12. Specifically, the hitting and kicking

> were acts done with the intent to cause injury: there is no allegation in the complaint that the acts themselves were merely shielding or the result of a reflex action. Therefore, the injuries were not as a matter of law accidental, and consequently there is no potential for coverage under the policy.

*Id*. at 312. In reaching this conclusion, the *Delgado* court relied on case law pre-dating Progressive's denial of coverage and applying the term "accident" in various contexts where the ultimate injury-producing act was intended. *See Delgado*, 47 Cal.4th at 311-12.

As in *Delgado*, Angelo's does not allege or argue that the employee's act of kicking Mr. Murphy was "merely shielding," reflexive or not intentional. Instead, Angelo's argues that acts committed in self defense are unintentional as a matter of law. This argument was rejected in *Delgado*. *Delgado* distinguished a line of cases interpreting "accident" in the context of exclusions from coverage on which Angelo's relies. *See Delgado*, 47 Cal.4th at 312-13 (distinguishing *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263 (1965); *David Kleis, Inc. v. Super. Ct*, 37 Cal. App. 4th 1035 (1995); *Merced Mutual Ins. Co. v. Mendez*, 213 Cal. App. 3d 41 (1989); *Mullen v. Glens Falls Ins. Co.*, 73 Cal. App. 3d 163 (1977), among others.) The difference in interpretation of the insuring language and exclusions in insurance policies has long been well-established:

> Although exclusions are construed narrowly and must be proven by the insurer, the burden is on the insured to bring the claim within the basic scope of coverage, and (unlike exclusions) courts will not indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage.

*Delgado*, 47 Cal.4th at 313, quoting *Waller*, 11 Cal.4th at 16.

Angelo's also relies on the events leading up to Mr. Murphy's injuries in an attempt to show the injuries were accidental because the melee was accidental. This argument was also rejected in *Delgado*. The provocative act or acts which prompt the injury-producing act do not render the injury-producing act accidental. *Delgado*, 47 Cal.4th at 314. "The term 'accident' in the policy's coverage clause refers to the injury-producing acts of the insured, not those of the injured party." *Id.* at 315. Accordingly, the starting point of the causal series of events are the insured's injury-producing acts and not the injured party's acts that purportedly provoked them. *Id.* As before, *Delgado*'s analysis is this regard is based on a long line of cases as well as hornbook law. *See id.* at 315-16. As noted above, nothing in the record suggests, and Angelo's does not argue, that the kick to Mr. Murphy's head was involuntary, unintended or accidental. To the contrary, the kick was issued in self defense.

Based on the foregoing, this court's conclusion is the same as that reached in *Delgado*:

> an insured's unreasonable belief in the need for self-defense does not turn the resulting purposeful and intentional act of assault and battery into "an accident" within the policy's coverage clause. Therefore, the insurance company had no duty

to defend its insured . . ..

*Delgado*, 47 Cal.4th at 317. Accordingly, Progressive did not have a duty to defend Angelo's in the Murphy Action.

Moreover, "[b]ecause the duty to defend is broader than the duty to indemnify, a conclusion that [the insurer] did not have a duty to defend will be dispositive of [the] plaintiff['s] claim that [the insurer] had a duty to indemnify." *Delgado*, 47 Cal.4th at 308 n.1. Accordingly, Progressive did not have a duty to indemnify Angelo's.

Last, bad faith liability ultimately turns on whether the refusal to pay policy benefits was unreasonable. *Chateau Chamberay Homeowners Ass'n v. Assoc. Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001). Therefore, in the absence of unusual circumstances, "[a] 'bad faith' claim cannot be maintained unless policy benefits are due . . .." *McMillin Scripps N. P'ship v. Royal Ins. Co.*, 19 Cal. App. 4th 1215, 1222 (1993); *see also id.* at 1222-23 (unusual circumstances consist of the insurer's misrepresentations which hinder the insured's own investigation or otherwise prevent the insured from protecting his or her own interests). As Angelo's does not allege or argue any unusual circumstances, a finding that no insurance benefits were owed precludes a finding of breach of the implied covenant of good faith and fair dealing based on the failure to pay the same benefits. *See McMillin*, 19 Cal. App. 4th at 1222-23; *see also Brehm v. 21st Century Ins. Co.*, 166 Cal. App. 4th 1225, 1235 (2008) ("As a general rule . . . there can be no breach of the implied covenant of good faith and fair dealing  if no benefits are due under the policy."). Because Progressive owed Angelo's no duty to indemnify or defend, Angelo's cannot assert a claim for breach of the implied covenant of good faith and fair dealing against Progressive.

Based on the foregoing, Progressive's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED**.

DATED: September 8, 2010

_____
M. James Lorenz
United States District Court Judge

1  COPY TO:

2  HON. LOUISA S. PORTER
   UNITED STATES MAGISTRATE JUDGE
3
   ALL PARTIES/COUNSEL
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28